IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | Case No.  1:20-CR-029 |
| **Plaintiff,** | |
| -vs- | **JUDGE PAMELA A. BARKER** |
| **RONALD SHARP,** | **ORDER** |
| **Defendant** | |

This matter is before the Court on two motions:  1.) Defendant's Motion in Limine filed on 4/21/21 ("Defendant's Motion") to which the United States of America filed a Response on 4/28/21 ("the Government's Response"); and the Government's Motion in Limine filed on 4/22/21 ("the Government's Motion") to which Defendant filed a Response on 4/28/21 ("Defendant's Response").  (Doc. Nos. 47, 52, 48, 53.)  For the reasons stated below, Defendant's Motion is GRANTED IN PART and DENIED IN PART, and the Government's Motion is GRANTED.

### A. Defendant's Motion

In Defendant's Motion, Defendant sets forth four requests of this Court.  Defendant's First Request is that this Court exclude any reference to his pending state case.  Defendant's Second Request is that this Court exclude any reference to the reasons for the search of his residence on October 4, 2019.  Defendant's Third Request is that this Court exclude any reference to the allegation that he possessed a firearm in 2018.  Defendant's Fourth Request is that this Court prevent the Government from impeaching Defendant with the details of his prior convictions or his status as a sexual predator in the event he testifies at trial.  (Doc. No. 47, PageID # 266.)

1

1. **Defendant's First Request**

In the Government's Response as to Defendant's First Request, the Government represents that it will not reference Defendant's pending state rape case, and, acknowledging that because Defendant's state case is still pending and he has not been convicted of any charges in that pending matter, and that he is presumed innocent, the Government will not elicit statements from any of the witnesses regarding this state case and will instruct its witnesses not to mention these pending charges.

Accordingly, Defendant's First Request is well-taken, unopposed and GRANTED.

2. **Defendant's Second Request**

As to Defendant's Second Request, Defendant submits that the reasons for the search of his residence on October 4, 2019[1] are irrelevant to whether he knew the firearm was in his house, and specifically, to determine the only element of the offense of felon in possession of a firearm and ammunition in dispute, i.e., whether Defendant knowingly possessed the firearm and ammunition.[2] Defendant asserts that even if this Court finds these facts to be relevant, they should be excluded pursuant to Fed. R. Evid. 403 because their probative value is substantially outweighed by the danger of unfair prejudice.

---

[1] Officer Bailey testified during the hearing on Defendant's Motion to Suppress, and is expected to testify at trial, that he searched Defendant's residence because he had reasonable suspicion of a parole violation, i.e., based on the rape allegation, he had reason to believe that Defendant had committed a new law violation and had minors in the home without prior approval; and prior to the search, he had no reason to believe a firearm would be found in the residence. (Doc. No. 36, PageID #s 183, 197.) (Doc. No. 47, PageID #s 269-270.)

[2] As the Defendant's Trial Brief and the Government's Trial Brief make clear, the parties have stipulated, and provided the Court with signed stipulations, that Defendant has been convicted of a crime punishable by imprisonment for more than one year and at the time of his alleged possession he knew he had been convicted of that crime, and that the firearm and ammunition were manufactured outside the State of Ohio, and therefore crossed state lines prior to the alleged possession. The parties agree that these stipulations will satisfy elements one, three and four of the four elements of the offense and that the only element in dispute, and the focus of the trial will be, whether Defendant knowingly possessed the firearm and ammunition (element two).

In the Government's Response, the Government represents that it will not elicit specific reasons as to why Defendant's residence was searched on October 4, 2019. However, the Government submits that it should be permitted to elicit testimony to explain in general that Defendant was on parole, in general what that entails, and that parole officers had received information that Defendant had committed a parole violation.. (Doc. No. 52, PageID # 344.) This is necessary, according to the Government, to provide context to the jury and avoids jurors unfairly and incorrectly inferring that parole officers were harassing or searching Defendant's residence for no reason whatsoever. The Government asserts that this evidence is *res gestae* evidence and considered "intrinsic" and admissible so that the Court should not undertake a Rule 404(b) analysis.

The Court finds that limited testimony explaining that Defendant was on parole, what that entails and that parole officers had received information that Defendant had committed a parole violation has contextual relevance, and the probative value of this limited testimony is not substantially outweighed by the danger of unfair prejudice. Therefore, it is admissible. *See United States v. Gibbs*, 797 F.3d 416, 424-25 (6th Cir. 2007). The relevance and probative value is to give the jury the context within which the search was made, or the background leading up to it, and avoid the jury reaching an unfair and incorrect inference that the parole officers had no valid basis to search Defendant's residence. Although the testimony may implicate character evidence arguably causing some prejudicial effect, i.e., that Defendant was on parole and may have violated the conditions thereof, it will not result in "unfair" prejudice. The jury will know through the agreed-to stipulations that Defendant had committed a crime punishable by more than one year, i.e., that he has some criminal history. Moreover, the Government has agreed, and the Court will

ensure through allowing the Government to lead witnesses on this topic, that the Government will not elicit specific reasons for the search.

Accordingly, Defendant's Second Request is GRANTED IN PART and DENIED IN PART, as stated herein.

3. **Defendant's Third Request**

As to Defendant's Third Request, Defendant argues that Defendant's prior 2018 possession of a firearm incident that arose from an APA search of a vehicle at his residence is not relevant.to whether he knew the firearm was in his house on October 4, 2019; and even if it is relevant, any reference to it should be excluded as its probative value is substantially outweighed by the danger of unfair prejudice. The Court agrees. Indeed, the Government has agreed that it will not elicit testimony concerning this 2018 firearm unless Defendant opens the door should he testify. The Government's argument, based upon the case law cited and discussed in its Response, that if Defendant testifies in a manner that contradicts his involvement with prior firearms, it should be permitted to cross-examine him using the underlying facts of his prior APA sanction whereby he served jail time is well-taken.

Accordingly, Defendant's Third Request is well-taken, unopposed and GRANTED, with the caveat that if Defendant testifies in a manner that contradicts his involvement with prior firearms, the Government will be permitted to cross-examine him using his APA sanction for the 2018 firearm.

4. **Defendant's Fourth Request**

As to Defendant's Fourth Request, Defendant acknowledges that if he testifies, the Government may attack his character for truthfulness by introducing evidence of his prior convictions pursuant to Evid .R. 609(a), but submits that evidence of the specific nature and charge

4

of his prior convictions are only admissible if the "probative value of admitting this evidence outweighs its prejudicial effect. Fed. Evid. R. 609(a)(1)(B)." (Doc. No 47, PageID # 272.) He urges this Court to exclude any evidence that his prior convictions include kidnapping and a sex offense because admission of this evidence will have no probative value, but will only create a substantial risk of prejudice to him given the nature of these offenses. (Doc. No. 47, PageID # 273.)

In response, the Government asks that this Court defer ruling on Defendant's Fourth Request until if, and when, he chooses to testify to determine if the probative value outweighs any prejudicial effect. (Doc. No. 52, PageID # 348.) The Court will defer its ruling on this issue. Consistent with the Sixth Circuit's urging in *United States v. Moore*, 917 F2d 215 (6th Cir. 1990), if Defendant testifies, the Court will require a brief recital by the Government of the circumstances surrounding the admission of the evidence, and a statement of the date, nature, and place of conviction, and allow Defendant to rebut the Government's presentation to demonstrate the potential prejudicial effect to Defendant if the evidence is admitted. And, if the Court does allow the Government to impeach Defendant's credibility with the title of his convictions, to include kidnapping and a sex offense, it will give a limiting instruction to decrease the risk of any prejudice to Defendant.

Accordingly, a decision on Defendant's Fourth Request is deferred as stated herein.

B. **The Government's Motion**

In the Government's Motion, the Government moves the Court to prohibit Defendant from asking questions or eliciting testimony from Officer Cam Bailey and Task Force Officer Matt Curley that he stated the firearm belonged to his uncle ("the Government's First Request"), and to

5

prohibit Defendant from questioning or eliciting testimony on statements that his uncle Jeffrey Wright made to Officer Bailey ("the Government's Second Request").

### 1. The Government's First Request

As to the Government's First Request, the Government anticipates that Defendant will try to assert that the firearm recovered in his bedroom belonged to his uncle, and for this purpose, will seek to attempt to admit into evidence through cross-examination of TFO Curley, that Defendant told him and/or Officer Bailey that the firearm belonged to his uncle who had slept in his bed and left his firearm underneath his bedroom pillow.

In support of the Government's First Request, the Government correctly asserts that pursuant to Fed. R. Evid. 801(d)(2) any statements made by Defendant are not hearsay, so as to allow the Government to introduce inculpatory statements made by him to law enforcement. The Government also correctly asserts that Defendant cannot seek to introduce his own self-serving, exculpatory statement, i.e., that the firearm found in his bedroom belonged to his uncle, citing *United States v. McDaniel*, 398 F.3d 540, 545 (6th Cir. 2005) (citing *United States v. Wilkerson*, 84 F.3d 692, 696 (4th Cir. 1996), *cert. denied*, 522 U.S. 934 (1997).

Whereas Fed. R. Evid. 801(d)(2) authorizes the Government to question law enforcement officers on direct examination regarding statements made by Defendant because of his status as a party-opponent, any testimony by these officers on cross-examination by Defendant's counsel regarding additional statements made by Defendant that have not already been introduced on direct examination will constitute inadmissible hearsay that will effectively allow Defendant to testify without being under oath, without cross-examination, and without direct scrutiny by the jury. *See United States v. McDaniel*, 398 F.3d 540, at 545-46. Accordingly, Defendant may not

6

elicit testimony through cross-examination of the law enforcement officers, Officer Bailey and/or TFO Curley, that Defendant told them the firearm was his uncle's firearm.

The Government anticipates that Defendant may attempt to use the "rule of completeness" set forth under Fed. R. Evid. 106 as the basis to cross-examine law enforcement officers regarding Defendant's statement that the firearm belonged to his uncle.  Specifically, because the Government anticipates eliciting testimony from law enforcement officers on direct examination that prior to the search of his residence, Defendant told the officers "nothing you find in that house is mine," it believes that Defendant will then argue that the "rule of completeness" requires him to be allowed to elicit testimony from the law enforcement officers regarding his statement that the firearm belonged to his uncle.  The Government correctly asserts that the "rule of completeness" does not override the prohibition from admitting self-serving exculpatory statements, and that the "completeness doctrine embodied in Rule 106 should not be used to make something admissible that would otherwise be excluded," citing *United States v. Gallagher*, 57 Fed. Appx. 622, at 628-29 (6th Cir. 2003), quoting *Trepel v. Roadway Express, Inc.*, 194 F.3d 708, 718 (6th Cir. 1999).

In his Trial Brief, Defendant has represented that "the defense does not anticipate invoking the rule of completeness, but any decision necessarily depends on the specific trial testimony" and that he "will, if necessary, raise the issue of completeness when Officer Bailey or Task Force Officer Matt Curley testifies."  (Doc. No. 54, PageID # 357.)  And, in Defendant's Response, Defendant submits that "as the government acknowledges, the rule of completeness may be implicated if the jury is misled by the government's admission of another statement Mr. Sharp made during his interview with Officer Bailey and TFO Curley."  (Doc. No. 53, PageID # 352.)  However, in the Government's Motion, it represents that it is not seeking to mislead the jury and therefore, the completeness doctrine will not be implicated.  (Doc. No. 48, PageID # 277.)  In the

7

Government's Trial Brief, the Government requests that "this Court make a determination prior to trial whether or not the rule of completeness is implicated to permit the admission of the Defendant's later statement." (Doc. No. 55, PageID # 367.)

The Court finds that Defendant cannot invoke the "rule of completeness" to elicit testimony from Officer Bailey or Task Force Officer Curley on cross-examination that Defendant told either one or both that the firearm belonged to his uncle, even if and when the Government elicits testimony from them during direct examination that Defendant stated "nothing you find in that house is mine."

Accordingly, the Government's first request is GRANTED, with the caveat that if, contrary to the Government's representation, testimony elicited from law enforcement officers can be construed or interpreted as misleading the jury regarding the actual meaning of one of Defendant's admissions, then the rule of completeness might be implicated.

   **2. The Government's Second Request**

As to the Government's Second Request, the Government submits that pursuant to Fed. R. Evid. 801, any statements made to law enforcement officers by Defendant's uncle, Jeffrey Wright, are hearsay, no exceptions apply, and therefore, they are inadmissible. According to the Government, then, Defendant should not be permitted to elicit from the law enforcement officers through cross-examination any testimony concerning what Mr. Wright told them.

In Defendant's Response, Defendant agrees that Mr. Wright's statement to Officer Bailey is hearsay, but he submits that it may be admissible as a statement against interest if Mr. Wright is unavailable pursuant to Fed. R. Evid. 804(b)(3). (Doc. No. 53, PageID # 353.) Defense counsel's understanding gleaned through information provided by the Government is that Mr. Wright is a convicted felon and prohibited from possessing a firearm. According to defense counsel, then, to

8

be admissible under Fed. R. Evid. 804(b)(3), the Court must declare Mr. Wright unavailable and determine that the statement meets the requirements of the hearsay exception outlined in Fed. R. Evid. 804(b)(3). Defendant more fully addresses this issue in his Trial Brief. (Doc. No. 54, PageID #s 357-359.)

In Defendant's Trial Brief, Defendant asserts that despite his best efforts, he has been unable to serve Mr. Wright with a subpoena for him to appear at trial to testify and that if he cannot be located, or if he appears and invokes his Fifth Amendment privilege against self-incrimination because he has a felony conviction and is prohibited from possessing a firearm, then Defendant will ask this Court to declare him unavailable under Fed. R. Evid. 804(a)(5) or 804(a)(1), respectively.[3] Defendant will then seek to admit Mr. Wright's statement to Officer Bailey that he owned the firearm located in Defendant's residence as a statement against interest pursuant to Fed. R. Evid. 804(b)(3).[4] And, Defendant anticipates calling Officer Bailey as a witness because "when Officer Bailey testifies in the government's case in chief, it will [be] unclear if Fed. R. Evid. 804(b)(3) applies." (Doc. No. 54, PageID # 359.)

In the Government's Trial Brief, the Government argues that even if Mr. Wright is declared unavailable pursuant to Fed. R. Evid. 804(a)(5) or (a)(1), nonetheless, his statement to Officer Bailey is not admissible because it does not meet the requirements for a statement against interest

---

[3] "A declarant is considered to be unavailable as a witness if the declarant: (1) is exempted from testifying about the subject matter of the declarant's statement because the court rules that a privilege applies; *** (5) is absent from the trial or hearing and the statement's proponent has not been able, by process or other reasonable means, to procure: (A) the declarant's attendance, in the case of a hearsay exception under Rule 804(b)(1) or (6); or (B) the declarant's attendance or testimony, in the case of a hearing exception under Rule 804(b)(2), (3), or (4). But this subdivision (a) does not apply if the statement's proponent or wrongfully caused the declarant's unavailability as a witness in order to prevent the declarant from attending or testifying." Fed. R. Evid. 804(a)(1) and (5).

[4] Fed. R. Evid. 803(b)(3) provides: "The following are not excluded by the rule against hearsay if the declarant is unavailable as a witness: *** (3) Statement Against Interest. A statement that: (A) a reasonable person in the declarant's position would have made only if the person believed it to be true because, when made, it was so contrary to the declarant's proprietary or pecuniary interest or had so great a tendency to invalidate the declarant's claim against someone else or to expose the declarant to civil or criminal liability; and (B) is supported by corroborating circumstances that clearly indicate its trustworthiness, if it is offered in a criminal case as one that tends to expose the declarant to criminal liability."

9

under Fed. Evid. R. 804(b)(3)(A) or (B). According to the Government, it is unknown whether Mr. Wright believed or knew that stating the firearm was his would subject him to criminal liability because of his Bribery conviction in military court, and it is not known if he took any steps to permit him to possess a firearm despite this disqualification, and therefore Fed. R. Evid. 804(b)(3)(A) is not satisfied. And, per the Government, Fed. R. Evid. 804(b)(3)(B) is not satisfied because there are no circumstances to indicate the statement's trustworthiness. All that is known at this point is that "a male claiming to be Jeffrey Wright answered a number that Sharp provided to Officer Bailey," and "claimed that the firearm was his over the telephone but did not appear for the scheduled meeting with Officer Bailey to verify his identity or verify the details of his statement." (Doc. No. 55, PageID # 369.) As the Government points out, the person that made this statement may not have even been Defendant's uncle Jeffrey Wright. The Court agrees with the Government that unless Defendant has more to offer concerning the circumstances surrounding the statement, the circumstances now known lack the trustworthiness required for it to be admitted under Fed. R. Evid. 804(b)(3).

     Both Defendant and the Government agree that if Jeffrey Wright appears to trial at testify, and because of his military conviction for Bribery that prohibited him from possessing a firearm, Mr. Wright has a valid Fifth Amendment right grounded on a reasonable fear of prosecution. Both Defendant and the Government agree, then, as does this Court, that should he appear, the Court should and will appoint counsel to advise him of his Fifth Amendment right. However, what the Government and Defendant appear to disagree about is whether Defendant should be permitted to call Mr. Wright to testify for the sole purpose of asserting his Fifth Amendment right against self-incrimination. According to the Government, allowing defense counsel to call Mr. Wright for the sole purpose of him invoking his right against self-incrimination "would create an improper

10

inference for the jury and create an appearance that Wright was guilty of possessing the firearm and ammunition." (Doc. No. 55, PageID # 370.) This Court will closely scrutinize this request if/when made by Defendant, particularly given the familial relationship between Defendant and Mr. Wright, consistent with the cases cited by the Government in its Trial Brief. (*Id.*)

Accordingly, as to the Government's Second Request, it is GRANTED if Jeffrey Wright does not appear at trial, unless Defendant offers more concerning the circumstances surrounding the statement Mr. Wright gave to Officer Bailey. If Mr. Wright does appear at trial, the Court will closely scrutinize whether defense counsel can call him as a witness for the sole purpose of having him assert his Fifth Amendment right against self-incrimination, after appointing counsel for him.

**IT IS SO ORDERED.**

Date: May 3, 2021

*s/Pamela A. Barker*
PAMELA A. BARKER
U. S. DISTRICT JUDGE